IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID OINONEN, GEORGIA LOWERY, ANDREW SCOTT CLAYTON, NANCY ELIZABETH BROWN, JOE PRICE, KELLY GORMAN, ABDOURAHMAN KEITA, Individually and on Behalf of Similarly Situated Employees, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-1450-M |
| TRX, INC. and TRX TECHNOLOGY SERVICE, L.P., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Docket Entry #19]. For the reasons explained below, Defendants' Motion is DENIED.

BACKGROUND FACTS AND PROCEDURAL HISTORY

The facts of this case have been previously set out in the Court's Memorandum Opinion and Order of February 3, 2010 (the "February Order"), granting Defendants' first Motion to Dismiss and granting Plaintiffs leave to replead their claims [Docket Entry #16]. On February 24, 2010, Plaintiffs filed a Second Amended Complaint asserting a single claim for disparate treatment age discrimination under the Age Discrimination in Employment Act ("ADEA").[1] Defendants TRX, Inc. and TRX Technology Service, L.P. (collectively "TRX") now move to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6).

---

[1] 29 U.S.C. § 621, *et seq.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[3] Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[4]

## ANALYSIS

Under the ADEA, it is unlawful for an employer to discharge a person because of that person's age.[5] When a plaintiff alleges disparate treatment, liability depends on whether age was the "but-for" cause of the employer's adverse action.[6]

A plaintiff is not required to plead a prima facie age discrimination case in order to survive a 12(b)(6) motion to dismiss.[7] However, a plaintiff must allege facts that would *plausibly suggest* that his or her employer decided to take the adverse action *because of* the plaintiff's age.[8]

---

[2] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).
[3] *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).
[4] *Id.* at 1950.
[5] 29 U.S.C. § 623(a)(1).
[6] *See Jackson v. Cal-Western Packaging Corp.*, --- F.3d ---, 2010 WL 1135735, at *2 (5th Cir. Mar. 26, 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009)).
[7] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002); *Puente v. Ridge*, 324 F. App'x 423, 427 (5th Cir. 2009) (citing *Swierkiewciz*, 534 U.S. at 511).
[8] *See, e.g., Bacon v. TCIM Servs.*, 2010 U.S. Dist. LEXIS 22384, at *9-10 & n.4 (N.D. Okla. Mar. 10, 2010) (explaining that, in order to state a claim of age discrimination under the ADEA, a plaintiff must assert that age was the "but-for" cause of the employer's adverse action, not just a substantial and/or motivating factor); *Griffin v. UPS*, 2010 U.S. Dist. LEXIS 47081, at *4 (E.D. La. Jan. 8, 2010) (citing the *Gross* "but-for" standard as the test for stating a valid claim for relief under the ADEA); *Olszewski v. Symyx Techs., Inc.*, 2009 U.S. Dist. LEXIS 58874, at *7 (N.D. Cal. June 24, 2009) (dismissing plaintiff's ADEA claim for failure to state a claim because she "failed to plead facts that raise more than the mere possibility that age was the 'but-for' reason for her termination" (citing *Gross*, 129 S. Ct. 2343); *but see Chacko v. Worldwide Flight Servs.*, 2010 U.S. Dist. LEXIS 9103, at *12 (E.D.N.Y.

In response to the February Order, which required Plaintiffs to plead facts that plausibly suggest that there was a discriminatory motive behind TRX's termination decisions, Plaintiffs have added significant new details in their Second Amended Complaint that demonstrate how age may have animated their terminations.[9] Together with Plaintiffs' previously pled allegations, which these new facts color and inform, the Second Amended Complaint gives rise to a plausible inference of discrimination.

Plaintiffs have pled that TRX retained less qualified, younger workers under the age of forty in the same positions or departments from which more experienced, older Plaintiffs were fired.[10] Plaintiffs plead that TRX did not offer workers over forty different positions.[11] Plaintiffs plead that workers over forty were told their positions were being eliminated, when in fact only certain people holding those positions were terminated.[12] Plaintiffs plead that TRX hired new employees after the layoffs, despite claiming downsizing and a hiring freeze.[13] Plaintiffs plead that TRX gave differing explanations for the layoff, stating to Plaintiff Joe Price that the

---

Feb. 3, 2010) (holding that an ADEA plaintiff is not required to plead that age was the "but for" reason for the disputed employment decision).

[9] In their Motion, Defendants cite to the portion of the February Order that reads:

> Under the ADEA, it is unlawful for an employer to discharge a person because of that person's age. When a plaintiff alleges disparate treatment, liability depends on whether age actually motivated the employer's decision. Therefore, in order to make a plausible allegation of disparate treatment in a mass layoff, Plaintiffs must plead facts identifying the discriminatory test or criteria used to determine the targets of the 2008 layoff, and which suggest that TRX *purposefully* adopted that discriminatory test or criteria to terminate Plaintiffs because of their ages. In other words, Plaintiffs must allege facts that would plausibly suggest that age was the "but-for" cause of TRX's decision to select Plaintiffs for termination.

February Order at 5-6 (citations omitted) (emphasis original). Defendants appear to have misunderstood this language. As the Court's analysis following this quoted paragraph made clear, the Court applied the "but-for" standard in conjunction with the pleading requirements of Rule 8 to find that Plaintiffs had not pled a plausible claim in their First Amended Complaint. The focus of the inquiry is on discriminatory *intent*; that is, whether age was purposefully adopted as the criteria for the layoffs. The discriminatory test or criteria allegedly used by TRX to determine the targets of the 2008 layoff is the age of the employees considered for termination.

[10] *See* Second Amended Complaint at ¶¶ 36, 54, 66.
[11] *See id.* at ¶¶ 26, 33, 40, 44, 53, 57, 65.
[12] *See id.* at ¶¶ 25, 27, 59.
[13] *See id.* at ¶¶ 28, 29, 42.

company was "going in a different direction," while telling Plaintiff David Oinonen that he was being terminated as part of a "reduction in force."[14] All but two of the Plaintiffs plead that they had been promoted multiple times while at the company, and Plaintiffs plead that they were qualified for the positions from which they were terminated, and qualified for other positions within the company.[15]

For purposes of a motion to dismiss, all well-pleaded factual allegations in the Second Amended Complaint must be accepted as true.[16] The Court thus accepts as true the following specific facts, which Plaintiffs allege in support of their claims of age discrimination: Georgia Lowery was twice promoted while at TRX and was working as one of five Document Processing Specialists when she was terminated. Her job duties were absorbed by her coworkers, who were all under the age of forty. Ten of the fifteen employees in her department were terminated, and the five remaining employees were all under the age of forty, all with less experience and tenure within the company than Lowery.

Joe Price received multiple promotions while at TRX and was working as one of the company's two "Managers of the Team of Project Managers" when he was terminated. The other employee in that position, who was not terminated, had been in that position for a shorter period than Price, and was under the age of forty.

Kelly Gorman was working as an Account Manager for TRX when she was terminated. Gorman was advised that her position was going to be eliminated; in fact, her position was filled

---

[14] *See id.* at ¶¶ 24, 39, 56.
[15] *See id.* at ¶¶ 22, 26, 31-33, 38-40, 45, 48-53, 61-65. Kelly Gorman, while not promoted while she was at TRX, worked for a subsidiary of TRX and her seniority with that company dated back to 1995. *See id.* at ¶ 55.
[16] *See Twombly*, 550 U.S. at 555-56. TRX's Motion to Dismiss ignores this dictate, and conflates the pleading stage with the *McDonnell-Douglas* burden-shifting framework applied at the summary judgment stage, by offering alternative, non-discriminatory explanations for the facts alleged by TRX. Such arguments miss the mark in the context of a motion to dismiss under Rule 12(b)(6).

by someone under the age of forty.  Gorman was the most qualified Account Manager and had the most seniority with the company.

Abdourahman Keita received several promotions while at TRX and was working as a Document Processing Specialist when he was terminated.[17]  Another Document Processing Specialist, under the age of forty, was not terminated, despite having received weaker performance evaluations than Keita.

TRX argues that this Court must apply each specific allegation only to the individual Plaintiff who pled it, because Plaintiffs are not sufficiently "similarly situated" to each other such that evidence as to one may be considered relevant as to another.[18]  The question of whether Plaintiffs are sufficiently similarly situated to each other is a fact-intensive inquiry usually best left to the summary judgment or trial stages.  In *Sprint/United Management Co. v. Mendelsohn*, the Supreme Court addressed the question of whether the Federal Rules of Evidence require admission of testimony by nonparties alleging age discrimination at the hands of supervisors who played no role in the challenged adverse employment decision.[19]  The Court held that such evidence was neither *per se* admissible nor *per se* inadmissible, stating: "The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact

---

[17] Keita alleges that there were twelve Document Processing Specialists within TRX, whereas Georgia Lowery, who was also a Document Processing Specialist, alleges that there were five.  The number of employees alleged to be in their department is also inconsistent.  However, these numbers are not critical to the Court's decision, and the inconsistencies are therefore not further addressed at this stage.

[18] *See* TRX's Reply at 4.  In *Wyvill v. United Companies Life Insurance*, the Fifth Circuit described several factors for determining the relevance of such evidence, holding that "testimony from former employees who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge."  212 F.3d 296, 302 (5th Cir. 2000).  However, these factors apply in determining the *admissibility* of such evidence at trial, not, as here, whether certain allegations may be considered by a court at the pleading stage.

[19] 552 U.S. 379 (2008).

based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."[20]

The *Sprint* Court thus envisions a fact-driven analysis in determining the relevance of one employee's termination to another employee's claim of discrimination. Courts should be cautious at the pleading stage in determining whether material in a complaint would be relevant and admissible at trial, because there may not be enough facts at that stage to properly draw that conclusion.[21]

It is unclear at this pre-discovery stage whether Plaintiffs are "similarly situated" to each other for evidentiary purposes. What *is* clear is that all the terminations took place around the same point in time, the 2008 layoff. It is the plaintiff's theory of the case that determines whether certain evidence is relevant.[22] Here, plaintiffs have not alleged merely that they were individually discriminated against on the basis of their age, but that they were terminated in the context of a single mass layoff in which age was used to determine the targets of termination.[23] Based solely on the pleadings before the Court, the Court cannot determine that facts supporting

---

[20] *Id.* at 388.
[21] *See, e.g., Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123-24 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence [for relevancy reasons] is not a proper basis for dismissal pursuant to Rule 12(b)(6). Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage."); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone." (citations omitted)); *but see Dent v. U.S. Tennis Ass'n*, 2008 U.S. Dist. LEXIS 46971, at *13 (E.D.N.Y. June 17, 2008) (ultimately holding, against this precautionary standard, that defendants had nevertheless satisfactorily established that the challenged allegations were irrelevant).
[22] *Johnson v. Big Lots Stores, Inc.*, 253 F.R.D. 381, 387 (E.D. La. 2008) (distinguishing *Wyvill* in a case where plaintiffs had alleged not merely individual misclassification, but that they were subject to a corporate policy of misclassification); *see also Dauer v. Verizon Comm'cns., Inc.*, 2009 U.S. Dist. LEXIS 5182, at *13-14 (S.D.N.Y. Jan. 26, 2009) (examining one plaintiff's theory of the case to determine whether certain evidence pertaining to the other two plaintiffs was relevant).
[23] *See* Second Amended Complaint at ¶¶ 15, 112, 116.

this theory would *not* be admissible and probative of discriminatory intent against individual employees.

The newly pled allegations in the Second Amended Complaint also contain new facts relating to TRX's decision not to give Plaintiffs certain information pursuant to the Older Worker Benefit Protection Act ("OWBPA") when they received their severance packages.[24] This information includes, among other things, the identification of those laid off, the job titles and ages of the terminated employees, and the ages of all employees in the same job classification, organization, or unit who were not laid off, and is only required if the employer seeks to enforce a terminated employee's waiver of the right to sue under the ADEA.[25]

The thrust of Plaintiffs' First Amended Complaint was that TRX failed to provide these disclosures to the terminated Plaintiffs, and that their waivers were thus invalid.[26] The Court decided in its February Order that an inference of discriminatory intent could not be drawn from TRX's failure to provide information it was not invariably required to provide.[27] However, in their Second Amended Complaint, Plaintiffs clarify their allegation by arguing that paying employees to obtain an unenforceable waiver does not make business or common sense, and that such behavior may therefore support an inference of discrimination.

Plaintiffs allege that TRX is a sophisticated, publicly traded company, represented by counsel, and that "TRX knew that it had to comply with the OWBPA to proffer a valid waiver of age claims, but intentionally and knowingly chose not to."[28] Assuming these facts to be true, the

---

[24] Pub. L. No. 101-433, 104 Stat. 978 (amending the ADEA).
[25] *See Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427 (1998).
[26] *See* First Amended Complaint at 7-8.
[27] *See* February Order at 7.
[28] *See* Second Amended Complaint at ¶ 75.

Court agrees that TRX's decision to pay for waivers it knew, or should have known, to be invalid supports a plausible inference of age discrimination.[29]

These new allegations also give added weight and significance to the other evidence previously presented by Plaintiffs, namely: (1) statistics purporting to show a mathematical bias against older workers in the layoff; and (2) Plaintiffs' claim that TRX "lied" to the EEOC about Oinonen's layoff.[30] In the context of the new facts pled in the Second Amended Complaint, the pleadings as a whole raise the inference of age discrimination against Plaintiffs from mere possibility to plausibility.[31] The Motion to Dismiss is therefore DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED**.

**SO ORDERED.**

June 1, 2010.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
**NORTHERN DISTRICT OF TEXAS**

---

[29] *Accord Yelverton v. Graebel/Houston Movers, Inc.*, 121 F. Supp. 2d 604, 611-12 (E.D. Tex. 2000) (finding that an employer's decision that did not make business sense was probative of intentional discrimination).

[30] *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1185 (5th Cir. 1996) ("The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." (citing *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977)).

[31] Defendants argue that the Court may not look at the broader context of this case, citing to a Fifth Circuit case that states: "'Evidence' that does not imply pretext taken alone does not do so when cumulated." *See* Defendant's Reply at 4-5 (quoting *Tex. Instruments*, 100 F.3d at 1186-87). However, as the context of *Texas Instruments* and that court's citation to *Holmberg v. Baxter Healthcare Corp.* make clear, that statement applies to cases in which *none* of the individual pieces of evidence points to discrimination. *See Holmberg*, 901 F.2d 1387, 1391 (7th Cir. 1990) ("While we heed [plaintiff's] warnings to view the evidence as a whole, the sum of four nondiscriminatory episodes does not support her case anymore [sic] than viewing the four episodes separately."). Here, in contrast, the Court finds that new evidence nudges some of that old evidence across the line from the speculative to the plausible. Rather than cumulating separate nondiscriminatory facts, this approach allows facts suggesting discrimination to inform and color facts that may appear innocuous on their own. *See Twombly*, 550 U.S. at 557 (requiring plaintiffs to place allegations "in a context that raises a suggestion of [illegal activity]," not merely facts that could just as well constitute legal conduct).